# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LANIE A. CROMER,

        Plaintiff,                      Case No. 2:09-cv-13716

vs.                                         Hon. Gerald E. Rosen

SAFECO INSURANCE COMPANY
OF AMERICA,

        Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     April 14 2010

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

### I. INTRODUCTION

Plaintiff Lanie Cromer ("Cromer") filed this action alleging that Defendant Safeco Insurance Company ("Safeco") breached its insurance contract with her. Cromer owned two adjacent houses in Detroit, Michigan insured with Safeco. As a result of a fire in March of 2008, both of these houses were damaged or destroyed. Cromer filed an insurance claim with Safeco

and her claim was denied.[1] Cromer alleges Safeco denied her claim in bad-faith and did so in a way which caused her emotional distress and violated Michigan consumer protection laws. As a consequence, in addition to any amounts which she alleges to be due under the contract, Cromer is also seeking consequential damages, including attorney fees, for having to litigate her claim.

This matter is presently before the Court on Defendant Safeco's Fed. R. Civ. P. 12(b)(6) Motion for Partial Dismissal of Plaintiff's Complaint. In this motion, Safeco seeks dismissal of Cromer's Michigan Consumer Protection Act claim, her various tort claims, and her claim for attorney fees as consequential damages, arguing that these claims are not supported by Michigan law.

This motion has been fully briefed by the parties. Having reviewed these briefs, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

As alleged in the Complaint, this case arises out of a house fire which occurred at Cromer's house at 14703 Alma Street in Detroit, Michigan, and spread to an adjacent house at 14711 Alma Street, which she also owned. Cromer's houses were insured by Defendant Safeco under policy numbers OK 632187 for the house at 14703 Alma Street and OK 633498 for the house at 14711 Alma Street, and she alleges the policies covered the properties against fire, vandalism and theft losses, as well as the contents and loss of rental income. Safeco admits that insurance policies were in effect for the two houses at the time of the fire loss.

---

[1] There are two separate insurance claims included in this matter: (1) 14703 Alma Street; and ( 2) 14711 Alma Street. Together, however, they form Plaintiff's cause of action ("claim") against Defendant for breach of contract as both houses were damaged or destroyed by fire and both houses were insured by Safeco.

Cromer alleges that she timely informed Safeco of the fire losses, provided reasonable proof of her claim, and performed all necessary conditions for being paid on the claim. As a result of the fire, she claims to have incurred damages and expenses which are, or should be, covered by her policies. However, Safeco has not paid the claim. Cromer alleges the reason Safeco gave her for not paying the insurance claim was that "the fire was intentionally set by [her] or persons in privity with [her]…[and]…[she] made misrepresentation[s] and concealment of material facts including the cause of the fire." [Complaint, ¶¶ 18-19.].

Cromer further asserts that after she made a statement under oath, Safeco had no factual basis for denying her claim. Because Safeco still did not pay her claim following her statement, she alleges neglect in the handling of her claim, neglect in Safeco's refusal to pay her claim, and that Safeco's conduct amounted to a bad-faith breach of her contract. Based on her version of events, Cromer claims to have a reasonable expectation of coverage "under the circumstances of this case" and that she has not only suffered loss, but she will also suffer future losses. Cromer also alleges that Safeco's failure to pay her claim in a timely manner is being done in an "intentional, tortious and tortuous" manner and is, "extreme and outrageous and done with injurious intent or reckless disregard for the consequences to [her]." [*Id.*, ¶¶ 25-26.].

Although Cromer's Complaint does not list individual counts, she is claiming she is owed:

(1) Amounts due under her insurance contract for her fire losses;
(2) 12% statutory interest pursuant to M.C.L. § 500.2006 for failing to pay the claim in excess of 60 days after reasonable proof of loss;
(3) Damages for bad-faith adjustment of her claim, which she asserts is a violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*;
(4) Damages for bad-faith adjustment of her claim, which she asserts is a violation of the Michigan [Uniform] Trade Practices Act ("UTPA"), M.C.L. § 500.2001, *et seq.*;

3

(5) Damages for Safeco's conduct "and or acts and omissions and failure to timely pay amounts due to Plaintiff [since they are] intentional, tortious, and tortuous . . . [and] . . . extreme and outrageous and done with injurious intent or reckless disregard for the consequences to the Plaintiff."; and,

(6) Future losses and consequential damages, including attorney fees.

In Safeco's answer to the complaint, it admits it did issue insurance policies on the two houses in question and that a letter was sent to her on July 2, 2009 outlining its reasons for denying her claim. Safeco also asserts that, "the insurance policy speaks for itself" with regard to what insurance benefits Cromer is or is not entitled. [Answer, ¶ 9.]. The Court has neither seen nor considered the July 2, 2009 letter from Defendant to Plaintiff nor the two insurance policies themselves as they have not been attached to any of the pleadings this Court reviewed. In this motion, Safeco seeks dismissal of all of Plaintiff's claims, except Plaintiff's breach of contract claim and any damages which may eventually be due to her pursuant to the UTPA, if she is ultimately successful in this matter.

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted. . . ." Analysis under Rule 12(b)(6) is appropriate where the Court is considering the pleadings themselves.

In deciding a Fed R. Civ. P. 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Kottmeyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). While this standard is liberal, it does require that plaintiff's allegations rise above the level of labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007). The complaint "must contain either direct or inferential allegations with respect to all material

4

elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 550 U.S. at 555 (citations omitted). Courts do not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1950 (2009). In the aftermath of *Iqbal*, this Court must consider the plausibility of the pleaded facts before determining whether those facts, if true, give rise to an actionable claim, and, therefore, a complaint must cross the line between possibility and plausibility of relief. 129 S. Ct. at 1949. Of course, determining whether a complaint states a plausible claim is context-specific. *Id.*

## IV. DISCUSSION

A. CROMER'S CLAIM FOR BAD-FAITH HANDLING OF AN INSURANCE CLAIM IS NOT RECOGNIZED IN MICHIGAN LAW.

    1.    There is No Tort of Bad-Faith Handling of an Insurance Claim in Michigan.

Cromer seeks damages alleging bad-faith on the part of Safeco in failing to pay her claim. However, the Michigan courts have refused to recognize bad-faith breach of an insurance contract as a separate and independent tort. When addressing this issue, the Michigan Court of Appeals stated: "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of an insurance contract does not state an independent tort claim." *Casey v. Auto Owners Ins. Co.*, 273 Mich.App. 388, 729 N.W.2d 277, 286 (2006).

Cromer relies upon *Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956), in stating: "[t]he law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies." 79 N.W.2d at 898. However, the Michigan Supreme Court quoted *Hart, supra,* in *Kewin v . Massachusetts Mut. Life Ins. Co.* 409 Mich. 401, 295 N.W.2d 50 (1980), another insurance breach of contract case, and said:

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie.

409 Mich. at 422, 295 N.W.2d at 56.

Similarly, in this case, Cromer merely alleges that Safeco's denial of her claim was "done in bad-faith" and that this amounted to a bad-faith adjustment of her claim. However, in *Kewin*, the Michigan Supreme Court expressly held that such an allegation did not give rise to a tort action when it stated: "[w]e decline … to declare the mere bad-faith breach of an insurance indemnity contract an independent and separately actionable tort and to thereby open the door to recovery for mental pain and suffering caused by breach of a commercial contract." *Id*.

The Michigan Court of Appeals reiterated this point in *Runions v. Auto-Owners Ins. Co*., 197 Mich.App. 105, 495 N.W.2d 166 (1992), another homeowner case in which the insurance company, following a fire, had not paid under the contract. There the court stated:

> The only conduct alleged by plaintiff as being tortious is defendants' failure to pay the claim. The facts alleged fall "far short of the conduct which is considered tortiously outrageous." At most, it attempts to plead the nonexistent tort of bad-faith handling of an

insurance claim. The trial court properly held that plaintiff's complaint failed to state a claim.

495 N.W.2d at 168 (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905, 909 (1985)).

The Court of Appeals reemphasized this point in *Isagholian v. Transamerica Ins. Corp.*, 208 Mich.App. 9, 527 N.W.2d 13 (1994), a case between a homeowner and an insurance company where the insurer did not pay benefits following a theft. The court there held that an insurer's bad-faith failure to pay its contractual obligation is insufficient to establish an independent tort action and upheld the dismissal of that count of the homeowner's action. 527 N.W.2d at 17.

Here, Cromer has neither alleged, nor made any showing whatsoever that Safeco engaged in any conduct other than denying her claim. Under Michigan law, a separate tort action cannot be maintained for the failure to pay under an insurance contract -- even if the non-payment is done in bad-faith. Accordingly, the Court finds that Plaintiff's claim for bad-faith handling of her insurance claim fails to state a claim upon which relief may be granted, and, therefore, it will be dismissed.

2. <u>Bad-faith Adjustment of an Insurance Claim Is Not Covered by the Michigan Consumer Protection Act.</u>

Next, Cromer alleges a violation of the Michigan Consumer Protection Act. M.C.L. § 445.903(1) makes any "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce…unlawful." However, the statute states that "[t]his act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956 [the Uniform Trade

Practices Act, M.C.L. § 500.2001 *et seq*.]." M.C.L. § 445.904(3). Indeed, the purpose of the UTPA is "to regulate trade practices in the business of insurance. . . ." *See* M.C.L. § 500.2002.

Prior to amendments to the MCPA, § 445.904(2) did allow suits against insurance companies. *See Smith v. Globe Life Ins. Co*., 460 Mich 446, 597 N.W.2d 28, 39 (1999). However, § 445.904 was amended through 2000 PA 432, which eliminated the ability to pursue claims against insurance companies under the MCPA. As a result, the MCPA is not applicable to insurance companies. More precisely, the Sixth Circuit has held that insurers are not subject to suit under the MCPA to the extent that their conduct is regulated by the Insurance Code. *McLiechy v. Bristol West Ins. Co.*, 474 F.3d 897, 904 (2007). *See also, Milhouse v. Mich. Basic Prop. Ins. Ass'n*, 2005 WL 3501364, at *5 (Mich.Ct.App., Dec.22, 2005) ("Thus, the [Michigan Consumer Protection Act] no longer applies to insurance companies."); *Rodgers v. N. Am. Ins. Co.*, 2005 WL 1683548, at *2-3 (Mich.Ct.App., July 19, 2005) ("2000 PA 432, eliminate[d] the ability to bring a MCPA claim against an insurance company. . ."); *Kitterman v. Mich. Ed. Employees Mut. Ins. Co.*, 2004 WL 1459523, at * 6 (Mich.Ct.App., June 29, 2004).

As the foregoing authorities make clear, Michigan has exempted insurance from the provisions of the MCPA, limiting statutory recovery pursuant to remedies under the Uniform Trade Practices Act. Under the UTPA, should a plaintiff ultimately prevail on a breach of contract action, "and benefits [are] not paid on a timely basis, the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute." *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich.App. 551, 741 N.W.2d 549, 557 (2007) (*analyzing* M.C.L. § 500.2006(4)). *See also, Commercial Union Ins. Co. v. Liberty Mutual Ins. Co*., 426 Mich 127, 393 N.W.2d 161, 164, n 5 (1986) (noting that M.C.L. § 500.2006(4) is intended to provide a penalty on insurers who procrastinate or are dilatory in paying). For the

foregoing reasons, the Court finds that Plaintiff's claim for damages under the Michigan Consumer Protect Act fails to state a claim upon which relief may be granted and, therefore, will be dismissed.

B.  CROMER'S CLAIM THAT SAFECO'S CONDUCT IN NOT PAYING HER CLAIM WAS INTENTIONAL, TORTIOUS, TORTUOUS AND/OR EXTREME AND OUTRAGEOUS FAILS TO STATE A CLAIM SEPARATE FROM THE ALLEGED BREACH OF CONTRACT ITSELF.

   1.  <u>Intentional and Tortious Conduct Must Involve Activity Separate and Distinct from the Alleged Breach of Contract.</u>

Cromer next asserts a claim for intentional infliction of emotional distress caused by Safeco's failure to pay her benefits, claiming that the failure to settle her claim has been "intentional and tortious." [Complaint, ¶ 25].

The Michigan Supreme Court has never adopted the tort of intentional infliction of emotional distress into Michigan jurisprudence. *See Smith v. Calvary Christian Church*, 462 Mich. 679, 614 N.W.2d 590, 593 n. 7 (2000); *Roberts, supra*, 422 Mich. at 597, 374 N.W.2d at 907; *Khalifa v. Henry Ford Hospital*, 156 Mich. App. 485, 401 N.W.2d 884, 890 (1987); *Andrews v. Prudential Securities, Inc.*, 160 F.3d 304, 309 (6th Cir. 1998). However, the Michigan Supreme Court has described the standards that would have to be met for satisfaction of such a claim:

> The cases thus far decided have found liability only where the defendant's conduct had been extreme and outrageous. It has not been enough that defendant acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

9

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left which irascible tempers may blow off relatively harmless steam.

*Roberts, supra*, 422 Mich. at 603, 374 N.W.2d at 908-909 (*quoting* Restatement 2d of Torts, § 46, comment d).

Thus, to the extent a cause of action for intentional infliction of emotional distress might be recognized, to make out a prima facie case, a plaintiff must, at a minimum establish: (1) extreme or outrageous conduct, (2) which intentionally and recklessly, (3) causes extreme emotional distress. *McCahill v. Commercial Union Ins. Co.*, 179 Mich.App. 761, 446 N.W.2d 579, 582 (1989) (*citing Roberts, supra*, 422 Mich. at 603, 374 N.W.2d at 908). However, Michigan law provides that "in a contractual setting, a tort action must rest on a breach of duty distinct from the contract." *Roberts, supra*, 422 Mich. at 602, 374 N.W.2d at 908. Additionally, the mere failure to perform an obligation under a contract "cannot give rise to a negligence action in tort." *Runions*, *supra*, 495 N.W.2d at 168 (*citing Roberts, supra*).

Under Michigan law, an action in tort cannot be maintained where a contractual agreement exists unless a duty separate and distinct from the contractual obligation is alleged. *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 683 N.W.2d 587, 592 (2004). In *Fultz,* the Michigan Supreme Court, stated: "[t]his Court and the Court of Appeals have defined a tort action stemming from misfeasance of a contractual obligation as the violation of a legal duty separate and distinct from the contractual obligation.'" *Id. (citing Rinaldo's Constr. Corp. v.*

*Michigan Bell Tel. Co.,* 454 Mich. 65, 559 N.W.2d 647, 658 (1997)); *See also, e.g., Sherman v. Sea Ray Boats, Inc.*, 251 Mich.App. 41, 649 N.W.2d 783, 789 (2002) (stating that if "[t]he omission is one of nonfeasance, a failure to act, the action lies in contract only.").

Cromer has failed to allege any actions by Safeco other than not having paid her claim and, therefore none independent of the alleged breach of contract. Accordingly, the Court finds that Plaintiff's intentional infliction of emotional distress claim for the mere breach of a commercial insurance contract fails to state a claim upon which relief may be granted and, therefore, will be dismissed.

2. Extreme and Outrageous Conduct Must Include Allegations Beyond the Breach of the Contract Itself.

Although Cromer alleges that Safeco's conduct in failing to pay the insurance claim was "extreme and outrageous," no allegations of extreme and outrageous behavior are actually made. In fact, Cromer does not allege any conduct by Safeco other than stating they lacked a "factual basis" to deny [her] claim.

In *Roberts, supra*, while not adopting the tort of intentional infliction of emotional distress, the Michigan Supreme Court noted that "[o]utrageous conduct causing severe emotional distress [is proven by] showing: (1) extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another." 422 Mich. at 602, 374 N.W.2d at 908 (quoting Restatement 2d of Torts §46). The Court went on to state this definition "[did] not indicate that such a cause of action could be established on evidence of an insurer's dilatory handling of a claim." *Id*. In fact, in *Roberts*, the Court concluded that even an insurer failing to supply proper forms, failing to timely respond and wrongfully denying a claim fell "far short" of extreme and outrageous conduct. 422 Mich. at 608, 374 N.W.2d at 911. Here, Cromer, does not

11

even allege those actions which the *Roberts* court found fell "far short" of being extreme and outrageous.

Morever, the Michigan Court of Appeals, on facts very similar to those pled in this case, found that a failure to reasonably investigate an insured's claim does not rise to the level of being the type of extreme and outrageous conduct which is necessary to maintain an independent cause of action in tort. *Crossley v. Allstate Ins. Co.*, 155 Mich.App. 694, 400 N.W.2d 625 (1986). In *Crossley*, the plaintiff alleged mental distress damages based upon defendant's, "alleged failure to reasonably investigate his claim and alleged deliberate oppression of plaintiff to deny him benefits." 400 N.W.2d at 628. The specific allegation in support of plaintiff's claim of intentional infliction of emotional distress was that the insurance company accused him, "of arson and fraud when [it] had absolutely no evidence whatsoever to support those allegations." *Id*. The court dismissed the tort claim, finding no claim was made by plaintiff independent of the breach of contract, and that defendant's conduct was not "outrageous." *Id*. The court further found that the defendant did not publish any allegations of arson; it was merely responding to the filed proof of loss. *Id*.

Turning to the complaint in this case, it is apparent that Cromer has not alleged any tortious conduct that is extreme and outrageous independent of the alleged breach of contract as required. Rather, she asserts only that Safeco has refused to pay benefits under the contract after she filed a proof of loss. Certainly, denials of claims are something that happen in the insurance industry on a routine basis and as the cases show, without more, the denial itself cannot give rise to separate liability in tort. Accordingly, the Court finds Plaintiff's claim for damages for intentional infliction of emotional distress for the mere breach of a commercial insurance contract fails to allege any conduct which could be construed as "extreme and outrageous"

12

independent of the alleged breach of contract. This claim, then, fails to state a claim upon which relief may be granted and, therefore, will be dismissed.

C. CROMER'S CLAIM FOR ATTORNEY FEES AS CONSEQUENTIAL DAMAGES IS NOT ALLOWED UNDER MICHIGAN LAW.

Finally, Cromer seeks consequential damages "including attorney fees." Plaintiff relies on the Sixth Circuit decision in *Murphy v. Cincinnati Insurance Co.*, 772 F.2d 273 (1985), in which the Sixth Circuit applying Michigan law, awarded attorney fees to a plaintiff as a result of having to litigate to get his insurance benefits. At the time *Murphy* was decided, no Michigan court had addressed this issue. Subsequent to that case, however, in a series of cases, the Michigan Court of Appeals has held that attorney fees are not recoverable as consequential damages. *See Taylor v. Blue Cross/Blue Shield of Michigan*, 205 Mich.App. 644, 657, 517 N.W.2d 864, 871 (1994); *Swickard v. Wayne Co. Medical Examiner*, 196 Mich.App. 98, 492 N.W.2d 497, 499 (1992); *Dunn v. Emergency Physicians Medical Group, P.C.*, 189 Mich.App. 519, 473 N.W.2d 762, 764 (1991).

For example, in *Taylor, supra*, a plaintiff brought suit against his insurance company claiming a bad-faith refusal to pay benefits under the contract. There, the Michigan Court of Appeals affirmed the trial court's denial of attorney fees as consequential damages, holding that, "[t]he general rule in Michigan prohibits an award of attorney fees as an element of cost or damages absent express authorization by statute, court rule, or other recognized exception." 205 Mich.App. at 657, 517 N.W.2d at 871. More recently, in *Burnside v. State Farm and Cas. Co.*, 208 Mich.App. 422, 424, 528 N.W.2d 749, 750 (1995), the Michigan Court of Appeals expressly rejected the Sixth Circuit's holding in *Murphy, supra*, and held that, "application of the American rule precludes recovery of attorney fees incurred as a result of an insurer's bad-faith

13

refusal to pay a claim." The *Burnside* court went on to state that, "[a]n insured's right to recover attorney fees as an element of damages is not triggered by the foreseeability of loss. Instead, attorney fees are recoverable only when expressly authorized by statute, court rule, or a recognized exception." 208 Mich.App. at 427, 528 N.W.2d at 751.[2]

In actions under a federal court's diversity jurisdiction, "[w]hen a conflict exists between holdings of the Circuit and more recent determinations of state appellate courts, the interpretation of the Circuit is not binding on federal district courts." *In re New York Asbestos Litig.*, 847 F. Supp. 1086, 1111 (S.D.N.Y. 1994); *see also Medalie v. FSC Securities Corp.*, 87 F. Supp. 2d 1295, 1302 (S.D. Fl. 2000). In such a situation the federal court is directed to follow the outcome it believes the highest court of the state would follow. *In re Asbestos Litig.*, 772 F. Supp. 1380, 1391 (E.D.N.Y. 1991), *aff'd in relevant part*, 971 F.2d 831 (2d Cir. 1992).

The Sixth Circuit has held that if a state intermediate appeals court decision, "[is] squarely on point, we would be obliged to follow it unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 396 (2000) *quoting Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245, 250-51 (6th Cir.1996).

Unlike when *Murphy, supra*, was decided by the Sixth Circuit, there are now Michigan Court of Appeals decisions on point denying recovery of attorney fees. *See Burnside, supra*; *Taylor, supra*. Cromer argues that "[t]he Sixth Circuit got it right [in *Murphy*]" and asserts that, "this issue will be revisited by the current Michigan Supreme Court." [Cromer's Response Br. at 4.]. However, Cromer offers no evidence or case law in support of this proposition other than

---

[2] This, of course, does not preclude the possibility of recovering attorney fees as sanctions for bad faith conduct at the conclusion of a federal action pursuant to Fed. R. Civ. P. 11 or 28 U.S.C. § 1927.

this naked assertion. Given that the Michigan Supreme Court has done nothing in nearly two decades to upset the Michigan Court of Appeals line of cases following the American Rule and holding attorney fees are not recoverable, the Court finds it unlikely that the Michigan Supreme Court will do so now.

The conflict between the holdings of the Sixth Circuit and the Michigan Court of Appeals on the issue of attorney fees as consequential damages was addressed directly in *City of Sterling Heights v. United Nat. Ins. Co*., 2006 WL 212030, (E.D. Mich. January 27, 2006), an unpublished opinion from this District. In that case, the court declined to follow the Sixth Circuit's holding in *Murphy, supra*, stating that, "[this] Court predicts that the Michigan Supreme Court will reach a similar conclusion [to that of the Michigan Court of Appeals]" and granted defendant's motion to dismiss as to the recovery of attorney fees under Michigan law as consequential damages in an insurance claim dispute. *Id*. at *9.

This Court sees no reason to doubt the validity of the Michigan Court of Appeals decisions and predicts, just as the court did in *City of Sterling Heights, supra,* that the Michigan Supreme Court would reach a similar conclusion. Therefore, the Court finds that in this matter, Plaintiff has failed to state a claim for attorney fees as consequential damages upon which relief may be granted under Michigan law, and the claim, therefore, is dismissed.

## V. CONCLUSION

For all the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Partial Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) **[Dkt #8]** is GRANTED. Accordingly,

IT IS HEREBY FURTHER ORDERED that Plaintiff's claims of bad-faith handling and bad-faith adjustment of her insurance claim; violation of the Michigan Consumer Protection Act; intentional infliction of emotional distress due to intentional, tortious and torturous and extreme and outrageous behavior by Defendant; and, her claim for attorney fees as consequential damages are DISMISSED, WITH PREJUDICE.

This case, therefore, will proceed only on Plaintiff's claim of breach of contract.

SO ORDERED.

                                                  s/Gerald E. Rosen
                                                  Gerald E. Rosen
                                                  Chief Judge, United States District Court

Dated: April 14, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2010, by electronic and/or ordinary mail.

                    s/Ruth A. Gunther, Case Manager